**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10691

_____

SHARON A. MCTURK,
RUTHERFORD ENTERPRISES, LLC.,
SJB SOLUTIONS, LLC.,
ASTRA SUPPLY CHAIN, LLC.,

*Plaintiffs-Appellants,*

*versus*

LOTTERY.COM, INC.,
MATTHEW MCGAHAN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cv-60993-MD

_____

Before NEWSOM, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Sharon McTurk and the entities she controls allege that Lottery.com and its CEO, Matthew McGahan, defrauded them out of around $1.9 million.  Both the direct and derivative theories of liability they assert, however, fail to plead the underlying fraud with the required particularity.  We therefore affirm the district court's dismissal of this action.

## I

McTurk had money, both in her own name and within the "Plaintiff Entities" she controlled: Rutherford Enterprises, SJB Solutions, and Astra Supply Chain.  Compl. ¶¶ 3–5, 11, Dkt. 1-2.  Lottery.com needed money.  *Id.* ¶¶ 14, 19.  So Ronald Farah, whose exact relationship to Lottery.com is not apparent from the complaint, approached McTurk with a business proposition: invest an (unspecified) sum of money in Lottery.com in exchange for discounted shares of the corporation.  *Id.* ¶ 14.  McTurk first transferred an (unspecified) sum of money to Farah, *id.* ¶ 15, and then wired an additional $500,000 to an entity owned and controlled by Lottery.com's then-CEO (a non-party to this suit), *id.* ¶ 16.  Lottery.com spent $75,000 of the latter sum and placed the rest in an investment account.  *Id.* ¶ 17.  The complaint doesn't reveal whether McTurk received any shares in return.

Lottery.com's only alleged direct involvement came later.  When Lottery.com needed more money, Farah took the initiative.  "At Farah's direction, [Matthew] McGahan," Lottery.com's CEO, "signed [a] letter" meant to "obtain more funds from" McTurk.  *Id.* ¶¶ 19, 21.  The letter was addressed to "SMRF Holdings," Compl. Ex. A, Dkt. No. 1-2, an entity co-owned by McTurk and Farah that

McTurk created at Farah's direction for the purpose of receiving the promised shares, Compl. ¶ 20. In relevant part, the letter stated that:

> In accordance with the agreed terms and conditions for your work or services to Lottery.com, Inc. (the "Company"), Company shall issue SMRF Holdings, LLC 3,000,000 common stock shares of Company, subject to: a) Company meeting all listing rules set forth by Nasdaq; b) issuance of shares does not cause the Company to violate any Nasdaq or U.S. Securities and Exchange Commission (SEC) requirements with respect to corporate governance or shareholder approval (if required); and c) approval by Company's Board of Directors and Compensation Committee for said issuance of shares.

Compl. Ex. A.

After McGahan sent this letter to Farah, he asked Farah "if the letters worked." Compl. ¶ 22. And, at least according to McTurk, it "did work as intended." *Id.* ¶ 23. "McTurk, individually, and the Plaintiff Entities provided more funds to Farah for Lottery.com," *id.*, following Farah's direction about "where to send the funds all based on representations that the funds would be for Lottey.com," *id.* ¶ 24. The shares never came. But McTurk was out $1.9 million. *Id.* ¶ 27. And Lottery.com acknowledged that "although it received funds directly or indirectly from Plaintiffs, the promise of shares in return was a fraud perpetuated by Farah." *Id.* ¶ 26. Farah has since passed away. *Id.* ¶ 25.

McTurk, together with the entities she controls, initiated this action against Lottery.com and Matthew McGahan in Florida state court. She sought recovery on four different theories of fraud: fraudulent misrepresentation, negligent misrepresentation, aiding and abetting fraud, and conspiracy to commit fraud. *Id.* ¶¶ 28–47. The defendants—all domiciled in states different from McTurk—promptly removed the case to the Southern District of Florida. They then successfully sought dismissal of the case. This is McTurk and her controlled entities' appeal.

## II

We review a district court's dismissal of a complaint for failure to state a claim de novo, accepting the complaint's factual allegations as true and construing them in favor of the plaintiff. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1345 (11th Cir. 2022). Since McTurk and her entities' legal theories all sound in fraud, they must all be pleaded with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1183 (11th Cir. 2025) (stating that "an aiding-and-abetting-fraud claim" must be "alleged with particularity" (citing Fed. R. Civ. P. 9(b))); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity.").

"Under Rule 9(b), a 'bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice.'" *Otto Candies*, 137 F.4th at 1193 (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019)). "Circumstances" constituting fraud which must be pleaded with particularity include "identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).

Fraudulent misrepresentation and negligent misrepresentation both require proof, at the very least, of actual reliance. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (fraudulent misrepresentation); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004) (negligent misrepresentation). The same is true for aiding and abetting and conspiracy—albeit by virtue of the underlying fraud required for each of these derivative theories. *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097–98 (11th Cir. 2017) (aiding and abetting fraud); *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) (conspiracy to commit fraud).

McTurk and her plaintiff entities' failure to plead actual reliance with particularity is fatal to each of their claims. The Rule 9(b) particularity standard requires that, in the case of reliance, the complaint must set forth "the manner in which" the defendants' statements "misled the plaintiff." *Mizaro*, 544 F.3d at 1237 (quoting *Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972 (11th Cir. 2007)).

Here's what McTurk alleges:

6                          Opinion of the Court                    25-10691

- "The Letter did work as intended – it was shared with McTurk and McTurk, individually, and the Plaintiff Entities provided more funds to Farah for Lottery.com."

- "McTurk, individually, and on behalf of the Plaintiff Entities, relied on the letter to continue advancing funds resulting in damage to the Plaintiffs."

Compl. ¶¶ 23, 32.

These threadbare assertions are insufficient to show the necessary "how," constituting the very sort of "bare allegation[s] of reliance on alleged misrepresentations, bereft of any additional detail," that fall short of what particularity requires. *Otto Candies*, 137 F.4th at 1193 (quoting *Wilding*, 941 F.3d at 1128). "To establish reliance under Florida law, the plaintiffs must show that 'but for the alleged misrepresentation or nondisclosure, the party would not have entered [into] the transaction.'" *Id.* (quoting *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999)). Here, the complaint does not explain how the letter was presented and explained to McTurk, including its caveats contemplating "services" performed and the requirement of board approval. Also absent is the "what"—which entities actually transferred money, how much they transferred, and how Lottery.com got the funds from Farah.[1] The only allegations presented with any degree of detail concern

---

[1] Moreover, formally speaking, the Letter promised shares only to SMRF Holdings, LLC—not to any of the plaintiffs. In fact, defendants are not alleged to have communicated with any plaintiff in this action.

the wires *predating* the Letter and defendants' involvement in the alleged fraud.  *See* Compl. ¶¶ 16–18.  The conclusory allegation that McTurk "relied" on the letter is insufficient.[2]

### III

For these reasons, we affirm the district court's dismissal of McTurk's action.[3]

**AFFIRMED**

---

[2] McTurk and her entities also insist that the district court misstated Florida's fraudulent-misrepresentation standard.  But even if the district court might have been imprecise in its articulation, it made no error in the law's application.  *See* Dismissal Order at 10, Dkt. No. 70 ("Based upon the allegations discussed above, the Complaint does not plausibly allege that the Plaintiff Entities *relied upon* the Letter . . . ." (emphasis added)).

[3] For unknown reasons, McTurk did not amend her complaint in response to Lottery.com's motion to dismiss as Federal Rule of Civil Procedure 15(a)(1)(B) permits.  Nor did she request leave from the district court to amend her complaint as Rule 15(a)(2) permits.  Therefore, the district court's dismissal of her complaint with prejudice was proper.  *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend [a] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").